CITY OF ANDERSON,
Defendant-Appellant,

v.

STATE of Indiana on Relation of Robert
Lee PAGE, Plaintiff-Appellee.

No. 2–677A232.

Court of Appeals of Indiana,
Fourth District.

Nov. 20, 1979.

James E. Freeman, Deputy City Atty., Anderson, for defendant-appellant.

Henry P. Schrenker, Anderson, Daniel A. Roby, Fort Wayne, for plaintiff-appellee.

MILLER, Presiding Judge.

The City of Anderson brings this appeal from a judgment in the Madison Superior Court which reversed a dismissal of Robert Page by the Board of Public Safety. We affirm.

*FACTS*:

Robert Page, who had been a member of the Anderson Police Department since March 15, 1969, was dismissed by the Board of Public Safety on March 6, 1973. This was the result of a disciplinary action brought against him pursuant to *Ind.Code* 18-1-11-3.[1] The action was instituted by a letter from Chief of Police Jamerson addressed to the Board. On February 9, 1973 a copy of this letter and a notice of hearing were served upon Page. The five charges consisted of his absence without leave, confronting his wife, insubordination, failure to give his change of address, and possible falsification of his pension fund application. He made a timely written request for a hearing.

Meetings of the Board were held on February 15, 1973, February 21, 1973 (a "secret" meeting) and March 6, 1973. On March 6, 1973 Page was notified of the Board's decision to dismiss him from the Anderson Police Department. On March 27, 1973 Page filed this action in the Madison Superior Court.

Pursuant to the Board's duty to file with the Superior Court a "transcript of all papers, entries and other parts of the record relating to such particular case", *Ind.Code* 18-1-11-3, the following documents were filed as the complete record before the Board:

1. A letter dated February 5, 1973 from Paddy Jamerson, Chief of the Anderson Police Department to Harold Snow, President of the Anderson Board of Public Safety setting forth the present charges against Page.

2. A letter dated February 9, 1973 from Harold Snow to Page informing him of those charges and of the proposed hearing date of February 15, 1973.

3. A letter dated February 10, 1973 from Page to Snow requesting a hearing.

4. A letter dated February 14, 1973 from William Raymore to the Board which refuted the charges on Page's behalf.

5. An unsigned letter dated January 24, 1973 from Fredrick Spencer, Assistant City Attorney to Jerald O. Finney inquiring as to whether Page wanted a hearing before the Police Pension Board.

6. Page's Police Pension Fund application.

7. A letter dated November 17, 1972 from Jamerson to Page, suspending Page for nine days for "avoidance of duty".

8. Unsworn statements made by Page's ex-wife and her boyfriend dated September 4, 1972 concerning an encounter with Page.

9. An "Inter-Office Memo" reporting Page absent without leave on March 11, 1972.

10. A "Complaint Report" dated March 11, 1972 from Lt. Barth concerning Page's absence with leave and his failure to report a change of address.

---

1. Ind.Code 18-1-11-3 provides procedural guidelines for disciplining firemen and policemen. Its applicability here is not in dispute.

11. A letter dated March 15, 1972 from Jamerson to Page informing him of his penalty for the unauthorized absence.

12. Two "Inter-Office Memos" dated December 14, and 16, 1972 reporting Page absent without leave.

13. A letter dated December 18, 1972 from Jamerson ordering Page to appear before the Safety Board on December 12, 1972.

14. A psychiatric report on Page prepared by Dr. William A. Abell dated January 11, 1973.

15. An otherwise unidentified note entitled "1972 Activities for Robert Page", listing his arrests and investigations and his attendance records.

16. Page's appointment as a patrolman, dated March 14, 1969.

17. The minutes of the Board's February 15, 1973, hearing which read:

Special meeting Thursday, February 15, 1973, at 5:00 p. m., with the Anderson Police Department.

*MEMBERS PRESENT*

Harold A. Snow, Chairman

Pete Burnett and Robert Phillips, Members

The meeting was called to order by Chairman Snow and guests were welcomed. Chairman stated that the purpose of the meeting was to consider written charges against Officer Bobby Page, as set out in Chief Jamerson's letter to Chairman Snow dated February 5, 1973. Chairman Snow said that notice of the hearing had been served on PAGE at St. John's Hospital and a copy of the charges were served with the notice.

*OTHERS PRESENT*

Asst. City Atty. Fred Spencer, Bobby Page, William Raymore, Chief Jamerson, Captain Howard Little, and Inspector Doyle Crosley.

Chairman Snow received a letter written by William Raymore on behalf of Officer Page, referred to Board.

Chief Jamerson presented charges against Officer Page including written reports and a copy of Dr. Abell's report and copies of Page's pension application. Officer Page and Raymore asked questions of Chief Jamerson and others. Officer Page made a statement to the Board that he wanted to continue as a policeman and was dissatisfied with his previous attorney, Mr. Jerry Finney.

Upon motion of Mr. Phillips and second by Mr. Burnett, the Board approved taking the matter under advisement.

*ADJOURNMENT*

A motion for adjournment was offered by Mr. Phillips and a second by Mr. Burnett was approved by the Board. Adjourned at 6:25 p. m.

/s/ Harold A. Snow
Harold A. Snow, Chr.,
BOARD OF PUBLIC SAFETY
/s/ Chester Ravage
Chester Ravage, Secretary
BOARD OF PUBLIC SAFETY

18. The minutes of the Board's March 6, 1973 hearing which read:

Special Meeting Tuesday, March 6, 1973, at 5:00 p. m., Room 5, City Building.

*MEMBERS PRESENT*

Harold Snow, Chairman

Pete Burnett and Robert Phillips, Members

*BOBBY PAGE*

The Board considered the evidence, testimony, and documents presented at its special meeting held February 15, 1973. The Board discussed the testimony of Officer Page and the statements of Mr. Raymore on his behalf. Each document was examined and discussed by the Board.

The Board found that Officer Page had violated department Rules # 2 and # 6 and had been absent without leave; that he had violated Rules # 21 and # 22 on September 3, 1972, when he confronted his former wife; that he had failed to keep his superior officer advised of his current address in violation of Rule # 5, and that Mr. Page was unfit and unable to continue as a police officer based upon the doctor's report and that Page had not disclosed prior injuries and hospitaliza-

tions when he made out his pension application.

It was moved by Mr. Phillips and a second by Mr. Burnett that Robert Lee Page ve [sic] dismissed as a member of the Anderson Police Department, Motion carried unanimously.

*ADJOURNMENT*

A motion for adjournment was offered by Mr. Phillips and a second by Mr. Burnett, was approved by the Board. Adjourned at 5:35 p. m.

/s/ Harold A. Snow
HAROLD A. SNOW, CHR.,
BOARD OF PUBLIC SAFETY
      /s/ Chester Ravage
      CHESTER RAVAGE,
      SECRETARY
      BOARD OF PUBLIC SAFETY.
HS/CR/mw

19. Page's notification of the Board's decision which reads:

March 6, 1973

Mr. Robert Lee Page
1924 Morton Street
Anderson, Indiana
Dear Mr. Page:

Please be advised that the Board of Public Safety of the City of Anderson, at a special meeting held March 6, 1973, has made the following decision:

"After due consideration of the written charges and allegations presented to the Board, and after consideration of the evidence and testimony heard at the hearing held on February 21, 1973, it was moved by Mr. Phillips and seconded by Mr. Burnett that Robert Lee Page be dismissed as a member of the Anderson Police Department. Motion carried unanimously."

Very truly yours
BOARD OF PUBLIC SAFETY
by:  /s/ Harold A. Snow
      Harold A. Snow, Chairman

—————————————————————

N. P. Burnett, Member

—————————————————————

J. Robert Phillips, Member

Attest:
 /s/ Chester Ravage
Chester Ravage, Secretary
FRS:cc
copy:  Paddy Jamerson, Chief
          Anderson Police Department

We make special note of the fact that, with respect to the hearing on February 15, 1973, the record of the Board contains no transcript of evidence, nor do the documents contained in said record which relate to the substance of the charges (documents numbered 6–15) bear any indication they were admitted as exhibits at the hearing. In addition these documents were delivered to the Board members three or four days before the hearing and to Page on the day of the February 15, 1973 hearing.

In his appeal to the trial court, Page alleged he was illegally discharged. On January 12, 1977, the trial court ordered Page reinstated and paid all wages withheld from him from March 6, 1973, until the date of his reinstatement. In support of this order the trial court found that:

[T]he conduct of the hearing, by the Board of Public Safety, was prejudicial, and unlawful, and in violation of the statutory and constitutional rights of the Plaintiff, which require a fair and impartial hearing, which the evidence clearly shows was not given the Plaintiff; and that there was no substantial evidence to support the ruling of said Board, discharging the Plaintiff, and that the ruling of the Board discharging the Plaintiff, therefore, was illegal, arbitrary and capricious; and that the discharge of the Plaintiff was erroneous, and that the same is null and void, and should be set aside.

We agree with the trial court for three reasons. Page was denied a full and fair hearing, not given proper notice and the decision of the Board was reached after a "secret" meeting of the Board at which Page's adversary, Chief Jamerson, consulted with the Board concerning its decision.

*Denial of a full and fair hearing.*

Our statute, *Ind.Code* 18–1–11–3, affords an accused police officer the right to a hearing as follows:

(Police officers) may be removed for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board. . . . (U)pon the trial of any charge preferred against any member of either of such forces, such board commissioners shall have power to compel the attendance of witnesses, and to examine them under oath, and to require the production of books, papers and other evidence, at any meeting of such board, and for that purpose may issue subpoenas and cause the same to be served and executed in any part of the county where such city is located.

In *Guido v. City of Marion* (1972) 151 Ind.App. 435, 280 N.E.2d 81, 84, this Court stated:

At the very outset of our discussion we must point out that where the dismissal of a police officer is in question a hearing before the Board of Public Works and Safety must be full and fair, before an impartial body and conducted in good faith. *Tryon v. City of Terre Haute*, (1963) 136 Ind.App. 125, 133, 193 N.E.2d 377. (transfer denied).

Any decision reached by the Board of Public Works and Safety without affording the accused officer a fair hearing is illegal. *State ex rel. Felthoff v. Richards*, (1932) 203 Ind. 637, 180 N.E. 596.

Other authorities state this requirement as follows:

A full hearing at which every party has the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required to a full and true disclosure of the facts is essential for wise and just application of the authority of administrative agencies. 2 *Am.Jur.2d, Administrative Law*, § 397.

An administrative hearing, particularly where the proceedings are judicial or quasi-judicial, must be adequate, or fair and open. There must be adequate notice of issues, and the parties must be given an opportunity to be present, to submit evidence, and to cross-examine witnesses. *I. L. E., Administrative Law and Procedure*, § 41.

The above authorities were cited with approval in *Derloshon v. City of Fort Wayne, Department of Redevelopment*, (1968) 250 Ind. 163, 234 N.E.2d 269, 273.

It has long been established that the term "hearing" as used in the statute has been construed to mean "trial".

But the appellee's complaint alleges that he was removed without a "trial". Trial at common law referred to a determination of the case upon the facts. Clearly, that is what is meant by the word "hearing" in the statute. *Michigan City v. State ex rel. Seidler*, (1937) 211 Ind. 586, 5 N.E.2d 968, 971.

█ The hearing or trial afforded a police officer under the statute in question must comport with due process requirements. Further, the purpose of giving the Board authority to discharge policemen is, of course, to protect the public interest. However, the purpose of the hearing is to protect the accused policeman and formal procedure is required, not to foreclose judicial review, but to protect the one charged. *State ex rel. Felthoff v. Richards*, (1932) 203 Ind. 637, 180 N.E. 596.

█ We must conclude from the record presented to us that Page did not have a full and fair hearing. After considering both the testimony before the trial court and the record of proceedings before the Board, we find that sworn testimony was not presented at the hearing. Nor were any exhibits offered or admitted into evidence. The only "evidence" which could have supported the charges was the information contained in the documents included in the Board record and heretofore noted in this opinion as documents numbered 6–15. These documents consisted solely of unsworn statements and unauthenticated re-

ports. Even if we would consider these documents as "evidence", which they were not, the presentation of same to the Board *three or four days before the hearing* was impermissible. Page was not present during their presentation and thus, a significant portion of the hearing would have been held in his absence. Later at the formal hearing when Page made his appearance the "evidence" was already being considered by the Board. Page was therefore denied the right to object to the "evidence" and, further, denied the right to cross-examine the individuals who had prepared the documents, all of such procedure obviously being contrary to law. *Mills v. Winchester*, (1959) 130 Ind.App. 397, 162 N.E.2d 97; *Derloshon v. City of Fort Wayne, Department of Redevelopment, supra.*

Page's conviction of the charges was unsupported by any evidence before the Board. He was denied the fair and impartial hearing guaranteed him by statute and, further, he was denied due process under the Fourteenth Amendment. See *State ex rel. Warzyniak v. Grenchik*, (1978) Ind.App., 379 N.E.2d 997; *Morris v. City of Kokomo*, (1978) Ind.App., 381 N.E.2d 510.

*"Secret" meeting of the Board.*

There was a meeting of the Board attended by Chief Jamerson and two city attorneys held on February 21, 1973 although no minutes of said meeting were filed by the Board with the trial court. Chief Jamerson testified in the trial court that the evidence against Page was discussed at said meeting. The dismissal letter of March 6, 1973 stated the decision of the Board as follows:

> After due consideration of the written charges and allegations presented to the Board, *and after consideration of the evidence and testimony heard at the hearing held on February 21, 1973*, it was moved by Mr. Phillips and seconded by Mr. Burnett that Robert Lee Page be dismissed as a member of the Anderson Police Department. Motion carried unanimously. (Our emphasis.)

Testimony before the trial court did not disclose that evidence or testimony was heard at this "secret" meeting. Moreover, it is probable the Board meant to refer to the hearing on February 15 rather than the meeting on February 21. However, the conduct of the Board in holding such a meeting was so improper that it fully justified, in our opinion, the finding of the trial court that the ruling of the Board was illegal, arbitrary, and capricious. The order of an administrative tribunal must be based on evidence produced at the hearing where there is an opportunity for *all interested parties* to offer evidence, cross-examine witnesses, and argue their positions. *Derloshon v. City of Fort Wayne, Department of Redevelopment, supra.*

The principle that administrative adjudications must be made upon known evidence applies to any kind of information obtained by the administrative agency secretly and at a time or place other than that appointed for the hearing, including ex parte testimony and affidavits, evidence taken prior to the time the one against whom the decision runs was made party to the proceeding, and individual own record, undisclosed statements or views of subordinates within the agency, the report of a hearing officer to the agency, and the report of recommendations of advisors to the determining agency. 2 *Am.Jur.2d, Administrative Law* § 385.

It is basic to our system that all adversaries have *equal* access to the tribunal hearing their cause. The fact that Chief Jamerson, an obvious adversary, acted as a "consultant" with the Board in their deliberation of the crucial rights of Page constitutes an obvious insult to the foregoing principle.

It is our conclusion that when a man's reputation and livelihood are put in jeopardy, he is entitled to a completely impartial tribunal whose decision must be arrived at without ex parte consultation with his adversary. This was not the case here. The Board's decision was contrary to law.

*Page did not receive adequate notice.*

As noted earlier Page was notified in writing that he was charged with (1) being absence without leave, (2) confronting his wife, (3) insubordination, (4) failure to inform the department of his change of address, and, (5) possible falsification of his pension fund application.

The finding of the Board was as follows:

The Board found that Officer Page had violated department Rules # 2 and # 6 and had been absent without leave; that he had violated Rules # 21 and # 22 on September 3, 1972, when he confronted his former wife; that he had failed to keep his superior officer advised of his current address in violation of Rule # 5, *and that Mr. Page was unfit and unable to continue as a police officer based upon the doctor's report* and that Page had not disclosed prior injuries and hospitalizations when he made out his pension application. (Our emphasis.)

Under *Ind.Code* 18–1–11–3, "incapacity" is a ground for dismissal. Here, the Board apparently considered a psychiatric report of Doctor William A. Abell which was among the documents supplied the Board three or four days prior to the hearing. Our Supreme Court has spoken with respect to the requirements of notice before a hearing conducted under the provisions of *Ind. Code* 18–1–11–3. In *State ex rel. Felthoff v. Richards,* (1932) 203 Ind. 637, 180 N.E. 596, 598, the Court stated:

The General Assembly has recognized the sound public policy of retaining in the public service policemen and firemen who have become increasingly valuable by reason of their experience and has, by statute, assured these public servants an indefinite tenure of position during good behavior and satisfactory performance of their duties. In order to protect this tenure of position, the General Assembly has provided for a hearing on proper notice for a policeman or fireman under charges. The hearing required by law is a fair hearing, one conducted in good faith and dominated solely by a desire to determine the fitness of the person under charges. *Further, the notice must apprise the accused of the acts of dereliction or personal defects which constitute the "cause." The purpose of the notice is not merely to inform of the time and place of the proposed hearing, but also to disclose the particular act or acts of delinquency or the particular defect constituting incompetency. If the relator was dismissed without "cause" or if he was dismissed without a fair hearing, then his dismissal was illegal.* (Our emphasis.)

In *City of Fort Wayne v. Bishop,* (1950) 228 Ind. 304, 92 N.E.2d 544, 547, the Court said:

Since the statute which the appellant through its Board of Public Safety invoked in this case is both remedial and penal, it was the duty of the Board to bring its written charges clearly within the terms of the statute providing therefor. Appellee could be tried before the Board of Public Safety only upon "the written reasons . . . entered upon the records of such board." *State ex rel. Felthoff v. Richards,* supra, 203 Ind. at page 644, 180 N.E. at page 598. These reasons would have to be supported by some substantial evidence, but they could not be supplanted, enlarged or added to thereby. To ascertain the charge or charges she had to meet appellee was required only to examine and meet the written reasons entered upon the records of the Board of Public Safety. She could not be required to defend as to any charges other than those so entered in writing. An examination of the charges so entered in writing against appellee upon the records of such board fails to disclose anything said or done . . . by appellee that would justify either dismissal or discipline under the statute. *State ex rel. Shanks v. Common Council, City of Washington,* 1937, 212 Ind. 38, 42, 7 N.E.2d 968. *City of Michigan City v. State ex rel. Seidler,* 1937, 211 Ind. 586, 592, 5 N.E.2d 968; *Coleman v. City of Gary,* 1942, 220 Ind. 446, 455, 44 N.E.2d 101.

Page had no actual notice of the charge of mental incapacity and, of course, had no opportunity to defend. Page did not waive this issue. Since Dr. Abell's report was not admitted as an exhibit, the charges were not amended by the evidence. *See Yunker v. Porter County Sheriff's Merit Board,* (1978) Ind.App., 382 N.E.2d 977, 981.

The decision of the Board does not indicate which particular charge or charges formed the basis for Page's dismissal. Therefore, we are unable to determine that the Board's decision was not based solely or in part on its illegal finding of Page's unfitness and inability to continue as a police officer.

We must conclude that the failure to give Page proper and adequate notice rendered his dismissal "wholly arbitrary and capricious." *City of Fort Wayne v. Bishop, supra,* at 548 of 92 N.E.2d.

In conclusion we reiterate the fact that Page was denied a fair hearing, adequate notice and an impartial decision by the Board. The judgment of the trial court is affirmed.

CHIPMAN and YOUNG, JJ., concur.